```
              UNITED STATES DISTRICT COURT
            SOUTHERN DISTRICT OF WEST VIRGINIA
                      AT CHARLESTON
```

**UNITED STATES OF AMERICA**

v.                         CRIMINAL ACTION NO. 2:11-00174

**MARVIN LEE FORD**


<u>MEMORANDUM OPINION AND ORDER</u>

Pending is defendant's motion to dismiss for selective prosecution, filed November 28, 2011.

On July 19, 2011, the United States filed a single-count indictment charging defendant with the knowing possession of a firearm after having been convicted of a felony, in violation of 18 U.S.C. § 922(g)(1) and 924(e) ("federal indictment"). On November 22, 2011, the court held a pretrial motions hearing attended by counsel for both parties and the defendant.

I.

Defendant moves pursuant to Federal Rule of Criminal Procedure 12(b) to dismiss the indictment, alleging that he is the victim of selective prosecution in violation of the Fifth Amendment Due Process Clause. Specifically, defendant asserts

that he was prosecuted on the basis of a referral and recommendation by Special Agent Doug Dean of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") in retaliation for his attempted murder of a fellow ATF Special Agent in 1994.

In 1995, defendant entered a plea pursuant to <u>North Carolina v. Alford</u>, 400 U.S. 25 (1970). The plea was based upon a 1994 charge that defendant attempted to murder West Virginia State Police Trooper R. Cunningham ("attempted murder charge"). As noted, over a decade later, shortly after noon on January 11, 2011, defendant was arrested by the Kanawha County Sheriff's Office after having been found in possession of a firearm during a routine traffic stop. On that same date, the Prosecutor of Kanawha County pursued a charge ("state charge") against defendant as a result of his possession of a firearm after having been convicted of a felony offense.

At some point following the attempted murder charge, but prior to defendant's arrest on the state charge, former Trooper Cunningham was appointed a special agent with ATF. Approximately 12 hours after defendant's arrest on the state charge, Special Agent Cunningham emailed photographs of defendant to himself using the "South Central Regional Jail Info" website. A few minutes later, Special Agent Cunningham sent the

photographs in an email to an Assistant United States Attorney who is not presently assigned to this case, along with Paul E. Cross, an apparent fellow ATF Special Agent. Special Agent Cunningham's email states as follows:

> The attached picture is the guy that shot at me a couple times on 1-28-1993 [sic]. He was arrested in Kanawha County today with a gun. He has multiple violent felony convictions in WV and Ky.
>
> Would your office be, interested in prosecuting him?

(Ex. B, Govt. Surreply at 1). On January 12, 2011, at 9:19 a.m., the Assistant United States Attorney responded as follows:

> Sounds like a worthy target. Who has the case? If the gun case is good, we should do it. Send it our way.

(Id.)

Approximately one hour later, Special Agent Cunningham replied:

> KCSO made the arrest. I'll call [Lieutenant] Greg [Young] and find out about it.
>
> Would you have a problem with me being involved?

(Ex. C, Govt. Surreply at 1). Ten minutes later, the Assistant United States Attorney replied as follows:

> I think you can be involved to facilitate things, but you should not be involved in a way where you would need to testify.

(Id.)

On January 26, 2011, at 3:22 p.m., Special Agent Cunningham sent the following message to the Assistant United States Attorney, Special Agent Dean, and Lieutenant Greg Young with the Kanawha County Sheriff's Department:

> I have been working on getting the court documents from KY on Marvin Lee Ford. It looks like he has a 1991 Burglary, 1994 Attempted Murder, Receiving Stolen Property, Possession of a handgun by a Convicted Felon and Criminal Mischief convictions in KY.
>
> In WV Ford has a 1995 conviction for Burglary, Grand Larceny and Transporting Stolen Property.
>
> Right now it looks like Marvin Ford is an Armed Career Criminal.
>
> Greg,
>
> I requested all of the felony cards from the FBI. I also requested the Pen Packets from WV and KY. So, depending on what is in the Pen Packets we may not need to go to the Clerk's office in Wayne and Boyd County for the convictions.
>
> Send me the gun information, photos and the report. I'll work on getting the nexus after I get the gun info.

(Ex. D, Govt. Surreply at 1). Lieutenant Young responded eleven minutes later, stating as follows:

> I have already requested the Wayne County stuff and it should have been mailed out today. I am working on my case submission for the print comparisons. Steve gets those done pretty fast. I have started the Etrace on the gun and I will send you the info for the nexus.

(Id.) On January 27, 2011, at 12:04 p.m., Special Agent Cunningham sent to Maureen Lewis, with a courtesy copy to Special

Agent Dean, the following email:

> Can you determine if the following individual has applied for, or received a pardon in the State of WV for his felony convictions? Also, please send a blue ribbon certification of your findings to Special Agent Rob Cunningham 300 Summers Street, Suite 1400 Charleston, WV 25301. If you have any questions, feel free to contact me at the below telephone numbers.
>
> [Two paragraphs follow thereafter that address the matter of billing and defendant's confidential identifying information].

(Ex. F, Govt. Surreply at 1).

On February 11, 2011, Lieutenant Young sent one additional email to Special Agent Cunningham alone, stating as follows:

> Hey I need the fingerprint cards so I can send them down to the lab. And have you had any luck on the Kentucky criminal records stuff.

(Ex. E, Govt. Surreply at 1).

On April 21, 2011, Special Agent Dean submitted to the United States Attorney's office a letter of recommendation that defendant be prosecuted for violating section 922(g)(1) based upon the same circumstances supporting the state charge. The recommendation mentions, along with other prior criminal history, an apparent reference to the attempted murder charge as, without elaboration, "the Conviction[] of Criminal Attempt to Commit Murder . . . ." (Ex. A, Def.'s Mot. to Dism. at 2).

5

In a July 7, 2011, Report of Investigation attached to defendant's motion to dismiss, Special Agent Cunningham is shown to have joined Special Agent Dean in serving federal grand jury witness subpoenas upon two individuals, Lewis Ford and Teresa Friley. Ms. Friley is defendant's girlfriend. The subpoenas related to the investigation involving defendant that led to the federal indictment.

The material portion of the Report of Investigation arising out of the service of the subpoenas provides as follows:

> Friley followed SA Dean to SA Cunningham's vehicle where the subpoena was located and Friley asked SA Dean what kind of incarceration time FORD was facing concerning the current charges. Friley asked if it would be five or ten years and SA Dean advised that he was unaware but FORD could possibly face up to 15 years due to the possible Armed Career Criminal Statute. Teresa Friley was asked if she was aware that Marvin FORD had been arrested and/or in trouble in his past and Friley stated that she was aware that he had gotten into trouble when you was younger. Friley stated that Marvin FORD suppos[sed]ly shot at someone years ago. SA Dean then advised Friley that it was in fact SA Cunningham that FORD had shot at while SA Cunningham was employed by the West Virginia State Police. Friley then became irritated and stated that she would rather not talk anymore until she discussed things with her attorney.

(Ex. C, Mot. to Dism).

On July 19, 2011, the United States Attorney's Office filed the federal indictment. On July 22, 2011, the Circuit

Court of Kanawha County dismissed the state charge. Defendant now requests dismissal of the federal indictment based upon selective prosecution. He also seeks discovery on the matter in the form of additional disclosures respecting the decision to prosecute, including (1) evidence of Special Agent Cunningham's role, if any, in drafting the letter of recommendation, (2) evidence respecting how the United States arrived at its charging decision, including any applicable criterion, (3) statistical evidence covering the 12-month period preceding the federal indictment that compares the number of individuals charged with a state felon in possession offense who were ultimately transferred for federal prosecution with the number of individuals whose state charges proceeded to final judgment in state court, and (4) a summary of the aforementioned state cases declined for prosecution by the United States Attorney's Office. Defendant states that "[s]uch evidence should include e-mail communications between the ATF Special Agents assigned to . . . [his] case and members of the United States Attorney's Office." (Def.'s Memo. in Supp. at 4).

The United States responds that defendant has failed to make the showing required for either the substance of the selective prosecution claim or the discovery that he seeks to support the challenge. It notes that the proceedings against

7

defendant commenced with his arrest by state law enforcement, not any investigation begun by Special Agent Dean or Special Agent Cunningham. It further contends defendant has failed to show the federal indictment was based upon an unjustifiable or arbitrary classification.

II.

In United States v. Armstrong, 517 U.S. 456 (1996), the Supreme Court discussed the pillars necessary to support (1) a selective prosecution claim, and (2) the right to discovery related to it. The discussion in Armstrong commences, and proceeds at some length, with a review of precedent stressing the fact that such a claim is aimed at the heart of "one of the core powers of the Executive Branch":

> A selective-prosecution claim asks a court to exercise judicial power over a "special province" of the Executive. The Attorney General and United States Attorneys retain " 'broad discretion' " to enforce the Nation's criminal laws. They have this latitude because they are designated by statute as the President's delegates to help him discharge his constitutional responsibility to "take Care that the Laws be faithfully executed." As a result, "[t]he presumption of regularity supports" their prosecutorial decisions and, "in the absence of clear evidence to the contrary, courts presume that they have properly discharged their official duties." In the ordinary case, "so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute,

8

and what charge to file or bring before a grand jury, generally rests entirely in his discretion."

Id. at 464, 466 (citations omitted); Reno v. American-Arab Anti-Discrimination Comm., 525 U.S. 471, 489 (1999) ("Even in the criminal-law field, a selective prosecution claim is a rara avis. Because such claims invade a special province of the Executive -- its prosecutorial discretion -- we have emphasized that the standard for proving them is particularly demanding . . . ."); United States v. Lighty, 616 F.3d 321, 369 (4th Cir. 2010).

Similar reservations appear in other Supreme Court cases:

> This broad discretion [afforded the Executive] rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review. Such factors as the strength of the case, the prosecution's general deterrence value, the Government's enforcement priorities, and the case's relationship to the Government's overall enforcement plan are not readily susceptible to the kind of analysis the courts are competent to undertake. Judicial supervision in this area, moreover, entails systemic costs of particular concern. Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy. All of these are substantial concerns that make the courts properly hesitant to examine the decision whether to prosecute.

Wayte v. United States, 470 U.S. 598, 607-08 (1985).

Our court of appeals has likewise observed that the presumption of regularity is not lightly disregarded:

> Indeed, criminal defendants commonly complain that other persons are more worthy of criminal prosecution. But our constitutional system leaves it to the discretion of the Executive Branch to decide who will face prosecution. <u>Unless a defendant provides "clear evidence" to overcome the presumption that a government prosecutor has acted lawfully</u> and without discrimination -- a "particularly demanding" standard -- he cannot demonstrate a constitutional violation for selective prosecution.

<u>United States v. Passaro</u>, 577 F.3d 207, 219 (4th Cir. 2009) (emphasis added) (citation omitted).

As one might expect, the rule will at times yield, but only to the founding document, as the Supreme Court noted in <u>Armstrong</u>: "[A] prosecutor's discretion is 'subject to <u>constitutional constraints</u>.'" <u>Id.</u> at 464 (emphasis added) (citing <u>United States v. Batchelder</u>, 442 U.S. 114, 125 (1979)). At issue in <u>Armstrong</u> was the alleged deprivation of the right to equal protection found in the Due Process Clause of the Fifth Amendment. The Supreme Court stated as follows respecting the <u>prima facie</u> showing required of the accused who wishes to make out a selectivity challenge:

> The claimant must demonstrate that the federal prosecutorial policy "had a discriminatory effect and that it was motivated by a discriminatory purpose."

<u>Id.</u> at 465. A satisfactory showing will establish by clear

evidence that (1) "similarly situated individuals of a different race were not prosecuted"; and (2) "that the decision to prosecute was invidious or in bad faith."  United States v. Olvis, 97 F.3d 739, 743 (4th Cir. 1996) (internal quotation marks and citations omitted).

In view of the aforementioned policy considerations, and inasmuch as discovery would impose significant costs if frequently granted for frivolous selectivity claims, the showing necessary to open the government's files is only a bit less demanding than that required for dismissal.  While a defendant need not present clear evidence to receive such discovery, he is obliged to offer at least some evidence demonstrating both discriminatory effect and purpose. Olvis, 97 F.3d at 743.

Defendant's theory for selective prosecution is that he was charged federally based upon animus harbored by Special Agent Cunningham arising out of the 1994 incident involving the two men.  Apart from the email chain, the proof offered in support is (1) mention of the 1994 incident in the April 21, 2011, letter of recommendation from Special Agent Dean, (2) the assistance rendered by Special Agent Cunningham in serving the grand jury subpoenas related to the federal charge, and (3) the comments made by Special Agent Dean to Ms. Friley during the subpoena service visit respecting the 1994 incident.

There are a host of difficulties with defendant's theory respecting the discriminatory purpose prong. Foremost, he has offered nothing beyond speculation to support the view that the decision-maker here, the Assistant United States Attorney, was motivated by anything other than defendant's alleged violation of the federal criminal code. That is no small matter inasmuch as the primary, if not the sole, focus is on the prosecutor as opposed to the investigator. See Wayte, 470 U.S. at 608 ("Examining the basis of a prosecution delays the criminal proceeding, threatens to chill law enforcement by subjecting the prosecutor's motives and decisionmaking to outside inquiry, and may undermine prosecutorial effectiveness by revealing the Government's enforcement policy.") (emphasis added); United States v. Hastings, 126 F.3d 310, 314 (4th Cir. 1997) ("We will not impute the unlawful biases of the investigating agents to the persons ultimately responsible for the prosecution.").

The email chain disclosed in the United States' surreply also constitutes far less than the required clear evidence necessary to support the selectivity claim. The January 11, 2011, email from Special Agent Cunningham states at the outset that defendant shot at him years earlier. One harboring a sinister motive might have tried to obscure, or omit, that fact

initially. While the defendant suggests this email reflects vindictiveness, it might just as reasonably be inferred that Special Agent Cunningham felt duty bound to bring to the attention of the federal prosecutor one whom he deemed to constitute a serious public safety threat based upon past, personal experience.

Additionally, Special Agent Cunningham did not demand defendant's prosecution, nor could he. He asked only if the Assistant United States Attorney wished to take the case, after having candidly conveyed his prior encounter with defendant. The decision to prosecute federally came later, following Special Agent Dean's April 21, 2011, letter of recommendation. The Assistant United States Attorney's January 12, 2011, email response to Special Agent Cunningham offers only a conditional willingness to pursue the federal charge "[i]f the gun case is good . . . ."

Then, just hours after his first contact with the Assistant United States Attorney, Special Agent Cunningham demonstrates on January 12, 2011, a willingness to step aside from any further role in the case, asking the Assistant United States Attorney if he had "any problem with [Special Agent Cunningham] . . . being involved" in the case. The Assistant

13

United States Attorney then, within minutes, restricted Special Agent Cunningham's participation, directing that he should not be involved in giving any testimony respecting the matter. The balance of the email messages indicates only that Special Agent Cunningham assisted in gathering evidence to support the federal indictment.

Having considered the entirety of the evidentiary record, defendant has not demonstrated a discriminatory effect motivated by a discriminatory purpose. He has also not identified that part of the constitution violated by a law enforcement officer bringing an alleged recidivist to the attention of a prosecutor when an earlier criminal offense committed by the perpetrator also involved, and was directed toward, the same officer. Neither has defendant shown that similarly situated individuals remained on a state, as opposed to federal, prosecution track. All of these deficits are fatal to his selective prosecution claim.

Defendant counters by asserting that he must have access to the United States' files in order to offer the clear evidence of impermissible selectivity required by law. He misapprehends his burden. Again, in order to obtain that discovery, he is obliged to offer some evidence demonstrating

14

both discriminatory effect and purpose.  This he has failed to do.

The circumstances here do not fit the usual selectivity rubric.  For that reason, the court has considered as well whether defendant's challenge might fall under a prosecutorial vindictiveness classification.  In <u>United States v. Wilson</u>, 262 F.3d 305 (4th Cir. 2001), our court of appeals stated as follows:

> To establish prosecutorial vindictiveness, a defendant must show, through objective evidence, that (1) the prosecutor acted with genuine animus toward the defendant and (2) the defendant would not have been prosecuted but for that animus.  <u>See</u> [<u>United States v.</u>] <u>Goodwin</u>, 457 U.S. [368] at 380 n. 12 . . . [(1969)] (noting that the charges must be brought "solely to 'penalize' the defendant and could not be justified as a proper exercise of prosecutorial discretion").
>
> If the defendant is unable to prove an improper motive with direct evidence, he may still present evidence of circumstances from which an improper vindictive motive may be presumed.
>
> Indeed, even before a court allows a defendant to have discovery on the government's prosecutorial decisions, the defendant must overcome a significant barrier by advancing objective evidence tending to show the existence of prosecutorial misconduct.

<u>Id.</u> at 314-15 (citation omitted).

Defendant has failed to satisfy either proof requirement set forth in <u>Wilson</u>.  It appears, in any event, that such claims often arise in a successful way only in the

postconviction setting, such as when a more serious sanction or charge is levied by the judiciary or a prosecutor following an accused's successful appeal.  See, e.g., United States v. Perry, 335 F.3d 316, 324 (4th Cir. 2003) ("Moreover, a presumption of prosecutorial vindictiveness is generally warranted only in a post-conviction setting, such as when a defendant successfully attacks his conviction on appeal, and then receives a harsher sentence on retrial. . . . For example, the Supreme Court has held that a presumption of prosecutorial vindictiveness does not arise when the Government carries out a threat, made during plea negotiations, to file additional charges against an accused who declines to plead guilty.") (citations omitted); Id. at 324 ("Because the unopposed mistrial resulting from the deadlocked jury did not arise from Perry's exercise of a protected right, but rather was based on trial events largely beyond his control, there is no reason to presume that the United States Attorney was 'punishing' Perry by filing a new charge against him.  Under such circumstances, no 'reasonable likelihood of vindictiveness exists,' and the presumption of prosecutorial vindictiveness is not warranted.").

Those type of circumstances are not present here.  It is perhaps for this reason that defendant has relied almost exclusively upon selectivity precedent as opposed to the

vindictiveness branch.  As noted, however, the selectivity challenge is meritless.

The court, accordingly, finds no basis upon which to conclude that the United States here engaged in either selective prosecution or prosecutorial vindictiveness.  It is, accordingly, ORDERED that the motion to dismiss be, and it hereby is, denied.

The Clerk is directed to forward copies of this written opinion and order to defendant, all counsel of record and any unrepresented parties.

DATED: December 12, 2011

_____
John T. Copenhaver, Jr.
United States District Judge